UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 5:26-cv-4571-SK Date: September 7, 2026

Title Nana Cheng v. Warden of Adelanto ICE Proc. Ctr, et al.

Present: The Honorable: Steve Kim, United States Magistrate Judge

| A. Silva-Elder | n/a |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |

| Attorneys Present for Plaintiff(s)/Petitioner(s): | Attorneys Present for Defendant(s)/Respondent(s): |
|---|---|
| None present | None present |

**Proceedings:** (IN CHAMBERS) **ORDER GRANTING PETITION**

Under the Immigration and Nationality Act (INA), pertinent regulations, and bedrock administrative law, an order of conditional release on bond—especially by an immigration judge—may be revoked only by an authorized agency official, in the exercise of discretion, for stated reasons invoked at the time. *See* 8 U.S.C. § 1226(a)(2), § 1226(b); 8 C.F.R. § 236.1(c)(9); *Saravia for A.H. v. Sessions*, 905 F.3d 1137, 1145 n.10 (9th Cir. 2018); *Matter of Sugay*, 17 I. & N. Dec. 637, 640 (BIA 1981); *see also Dep't of Commerce v. New York*, 588 U.S. 752, 785 (2019) ("The reasoned explanation requirement of administrative law … is meant to ensure that agencies offer genuine justifications for important decisions, reasons that can be scrutinized by courts and the interested public."); *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (a reviewing court "must judge the propriety of such action solely by the grounds invoked by the agency"). Yet the record here revealed no evidence that petitioner's order of release on bond by an immigration judge in May 2025 was validly revoked by the discretionary decision of an authorized DHS official before she was arrested and re-detained by an ICE agent in July 2026. With this gap identified at the hearing on the petition, the Government was given another chance to produce such evidence.

The Government's response (ECF 13), however, answers a different question (and inadequately at that)—who *could have* exercised DHS's discretion under the

relevant regulation, § 236.1(c)(9)—while offering no evidence that anyone authorized actually did in petitioner's case. Instead, the response attaches only the immigration judge's May 2025 bond order and a Form I-391 ("Notice–Immigration Bond Cancelled") telling the obligor that petitioner's monetary bond has been cancelled and where his refund check will be mailed. But neither is a revocation document, and nothing in either reflects the exercise of revocation discretion—much less by an authorized official—at or before the time of petitioner's arrest.[1] The lack of that evidence is fatal to the Government's position because the "agency must defend its actions based on the reasons it gave when it acted" rather than "rely upon reasons absent from its original decision." *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 24 (2020); *see Kisor v. Wilkie*, 588 U.S. 558, 579 (2019) ("[A] court should decline to defer to a merely convenient litigating position or *post hoc* rationalization advanced to defend past agency action against attack.") (cleaned up); *Judulang v. Holder*, 565 U.S. 42, 53 (2011) (Because "courts retain a role, and an important one, in ensuring that agencies have engaged in reasoned decisionmaking," judicial review "involves examining the reasons for agency decisions—or, as the case may be, the absence of such reasons.").

Without that evidence of valid revocation by an authorized official exercising statutory discretion, the immigration judge's release order here continued to subsist under § 1226(a). To be sure, the Government has congressional authority to revoke release "at any time" under § 1226(b), but that is not the same as authority to revoke *in any way*—and by anyone. Thus, petitioner's release order cannot be deemed to have been legally revoked here, meaning she is presently "in custody in violation of the ... laws ... of the United States," 28 U.S.C. § 2241(c)(3)—and thus entitled to release from such unlawful custody. *See INS v. St. Cyr,* 533 U.S. 289, 301 (2001); *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 267-68 (1954); *see also Boumediene v. Bush*, 553 U.S. 723, 765-66 (2008) ("[T]he writ of habeas corpus is itself an

[1] If anything, the bond-cancellation form undercuts rather than supports the Government's position, since the refund is being issued—on the face of the form—because the bond's conditions "have been satisfied," not because petitioner breached the bond.

indispensable mechanism for monitoring the separation of powers. The test for determining the scope of this provision must not be subject to manipulation by those whose power it is designed to restrain.”).

Contrary to the Government’s contention, it doesn’t matter that respondents can characterize petitioner’s immigration arrest as justified by the “changed circumstances” of her recent criminal arrest. That just restates the substantive standard by which respondents contend a release order (even one by an immigration judge) can be later revoked by a DHS official. *See Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1197 (N.D. Cal. 2017); *Matter of Sugay*, 17 I. & N. Dec. at 640. But the pertinent question is what *evidences* the revocation decision itself. On that score, the Government’s response is empty. Nor is it any answer for the Government to reiterate that its “discretionary judgment regarding the application” of § 1226(b) to revoke release otherwise granted under § 1226(a) is insulated from judicial review. 8 U.S.C. § 1226(e). That jurisdiction-stripping provision doesn’t foreclose legal claims that the agency either failed to exercise altogether the discretion bestowed by statute or flouted its own regulations governing the exercise of such discretion. *See Jennings v. Rodriguez*, 583 U.S. 281, 295 (2018); *Demore v. Kim*, 538 U.S. 510, 516–17 (2003); *Accardi*, 347 U.S. at 267-68; *Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011).

Besides, the Government’s position rests on a “Matryoshka doll” of claimed statutory successions and regulatory delegations that, even taken at face value, does not at its core reach the field officer who arrested petitioner. *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 497 (2010). The Government’s syllogism goes like this: (1) the former INS “district director” listed in 8 C.F.R. § 236.1(c)(9) can now mean an ICE “field office director” (assuming proper delegation through the 2003 DHS reorganization); and (2) the “field officers under that director are the immigration officers ‘authorized and designated to exercise the arrest power’ and to issue and serve the warrant on which rearrest proceeds” (citing 8 C.F.R. §§ 287.5 and 236.1(b)(1)); therefore (3) the field officer who had authority to *arrest* petitioner somehow also had the authority to *revoke* the immigration judge’s release order. But the conclusion does

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. | 5:26-cv-4571-SK Date: September 7, 2026 |
| Title | Nana Cheng v. Warden of Adelanto ICE Proc. Ctr, et al. |

not follow from the premises: arrest authority and revocation authority are different powers vested in different people. Not only does the text of the INA reveal that distinction, *see* 8 U.S.C. § 1226(b) ("The Attorney General at any time may *revoke* a bond or parole authorized under subsection (a), *rearrest* the alien under the original warrant, and *detain* the alien.") (emphasis added), but the Government's own regulation reflects the statutory difference in application, *see* 8 C.F.R. § 236.1(c)(9) ("When an alien who, having been *arrested* and taken into custody, has been released, such release may be *revoked* at any time in the discretion of [the enumerated officials], in which event the alien may be taken into physical custody and *detained*.") (emphasis added).

In short: arrest, revocation, and detention are distinct and discrete agency actions. *See*, *e.g.*, *Saravia*, 905 F.3d at 1142 (distinguishing "arrests" of previously released noncitizens from "revocation" of their prior releases). So even if the Government is right that § 236.1(c)(9) confers revocation authority on director-level officials of DHS (and that documented delegation within DHS for this purpose can be shown), and it is also correct that ICE agents (as officers under such directors in the DHS org chart) can make arrests in the field, it doesn't follow from those claimed propositions that ICE agents with *arrest* authority are authorized to make *revocation* decisions too. *See generally Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) ("It is implausible that the mention of three discrete events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings. Not because Congress is too unpoetic to use synecdoche, but because that literary device is incompatible with the need for precision in legislative drafting."). And to enforce that distinction is not to question the Executive's authority to organize its own subordinates or to delegate, through proper channels, the discretion that § 236.1(c)(9) confers. Quite the opposite: the exercise of executive power "acquires its legitimacy and accountability to the public through 'a clear and effective chain of command.'" *United States v. Arthrex, Inc.*, 594 U.S. 1, 11 (2021) (quoting *Free Enter. Fund*, 561 U.S. at 498).

But the inescapable problem here is that the Government has produced no evidence that the correct link in that chain exercised the discretion the regulation requires. When Congress or an agency conditions an exercise of power on the judgment of a designated official, that condition is not a formality; it is the mechanism by which responsibility for the decision is fixed ultimately on the executive-branch official accountable to the people. *See generally Seila L. LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 231–32 (2020); *Free Enter. Fund*, 561 U.S. at 497-98. Indeed, the Government evidently knows how to grant authority to field agents when it wants to: in the immediately preceding paragraph of the controlling regulation, § 236.1(c)(8), the agency confers discretion on "any officer authorized to issue a warrant of arrest" to release certain arrested noncitizens (if they are otherwise eligible for release). If such a field officer is also authorized to revoke an immigration judge's bond order too, why doesn't the next paragraph—§ 236.1(c)(9)—just say that? The soundest and most parsimonious answer under established canons of interpretation, *see, e.g.*, *Nken v. Holder*, 556 U.S. 418, 430 (2009); *Russello v. United States*, 464 U.S. 16, 23 (1983), is that the discretionary authority to revoke—and the regulatory assignment of the official empowered to exercise that discretion—is vested in a director-level DHS official, not the thousands of ICE agents or deportation officers in the field.[2]

The disposition of this petition, then, comes down to this: whether the Government has proven with competent evidence that it complied with the statutory and regulatory requirements for revocation of an immigration judge's prior release order. *See Accardi*, 347 U.S. at 267-68; *see also Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412 (2024) ("Courts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority."); *cf. Morton v. Ruiz*, 415

[2] And as the court explained at the hearing on this matter, doctrinal mischief—in immigration, administrative, and habeas law—abounds on all sides when discrete agency actions and those authorized to carry them out are blurred into a monolith. Indeed, it is when arrest, revocation, and detention are haphazardly collapsed into indistinguishable events that the chain of command between the "lowest officers, the middle grade, and the highest," *Free Enter. Fund*, 561 U.S. at 498, becomes so obscured and tenuous that the Executive's "legitimacy and accountability to the public" is inevitably lost in the fog. *Arthrex*, 594 U.S. at 11.

U.S. 199, 235 (1974) ("Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures. This is so even where the internal procedures are possibly more rigorous than otherwise would be required."). It cannot be too much to ask for such evidence of the exercise of an authorized agency official's discretion to revoke a noncitizen's release on bond ordered by an immigration judge—especially since the Government can then immunize its discretionary judgment from judicial review under § 1226(e). *See Niz-Chavez v. Garland*, 593 U.S. 155, 172 (2021) ("If men must turn square corners when they deal with the government, it cannot be too much to expect the government to turn square corners when it deals with them."); *Kucana v. Holder*, 558 U.S. 233, 252 (2010) ("Congress ensured that it, and only it, would limit the federal courts' jurisdiction" under the INA, so the Executive cannot "shelter its own decisions" from judicial review "simply by issuing a regulation declaring those decisions 'discretionary.'"). That is not to imply that there is no authority under the INA to arrest and re-detain petitioner when changed circumstances warrant, or that none could ever be invoked through discretionary revocation of a release order by an official authorized to exercise that discretion under the agency's own regulations. *See, e.g.*, *Jimenez v. Armant*, 2026 WL 2058436, at *2 (C.D. Cal. July 13, 2026). It is only to say that respondents have produced no evidence of such valid revocation here and now—rendering petitioner's present custody unlawful in the face of a subsisting release order by an immigration judge.

* * *

For these reasons, the petition for a writ of habeas corpus under 28 U.S.C. § 2241 is GRANTED. Petitioner **Nana Cheng (A# 216-187-143)** is ORDERED RELEASED from custody forthwith on the same conditions and terms of release in the immigration judge's May 22, 2025 bond order. Judgment in petitioner's favor will be entered accordingly.

IT IS SO ORDERED.